OTERO Y STRIKER, PETICIONARIOS Y APELANTE EL PRIMERO, v.
EL PUEBLO, OPOSITOR Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en procedimiento de declaratoria de herederos.

No. 1691.—Resuelto en enero 21, 1918.

DECLARATORIA DE HEREDEROS—HIJOS NATURALES—RECONOCIMIENTO EN LA PARTIDA
DE BAUTISMO DEL AÑO 1851—DOCUMENTOS AUTÉNTICOS.—En un procedi-
miento *ex parte* sobre declaratoria de herederos y en defecto de alguna
alegación de fraude, una partida auténtica de bautismo celebrado por un
cura párroco en 1851 en que expresamente se refiere a un documento del ar-
chivo parroquial para probar la verdad de lo que en la misma se hace cons-
tar respecto del estado civil de un hijo natural reconocido, identifica sufi-
cientemente un documento de la misma fecha, hallado en el archivo local
después de más de sesenta años, en el que se reproducen las constancias
de la inscripción, lleva la firma del pretenso padre putativo, y contiene la
siguiente manifestación: "Reconozco este niño que consta en la partida
que antecede por mi hijo natural, queriendo sea este documento de recono-
cimiento en forma."

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. José Sabater* y *Abraham Peña.*

Abogados del apelado: *Sres. Jaime Sifre, Jr., Fiscal Es-
pecial* y *N. R. Canales, Oficial Jurídico.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del
tribunal.

Trátase de un recurso de apelación interpuesto contra
una orden que reza en parte como sigue:

"Resolviendo la moción del promovente Julio Otero Rivera, de
fecha 13 de junio de 1917, solicitando la reconsideración de la orden
de 9 de junio del año en curso 1917 denegando aprobar la declara-
toria de herederos del finado Dionisio Eleuterio Arroyo y Striker,
y acompañando una nueva certificación expedida por el cura párroco
de esta ciudad; la corte es de opinión que tampoco la nueva certifi-
cación acredita que el causante Dionisio Eleuterio Arroyo y Striker
era hijo reconocido de Isidoro Arroyo. Si bien es verdad que el cura
párroco certifica que se encuentra en los archivos parroquiales un
documento que dice así:

" 'Dionisio Eleuterio, No. ——, a 9 de octubre del año pasado,
hijo reconocido de Don Isidoro Arroyo y de Doña Ceferina Striker,

abuelos paternos Don Isidoro Arroyo, difunto y Doña Juana Budia y maternos Don Enrique Striker difunto y de Doña Manuela Seguinó. Padrinos Don Martín Más y Doña Pilar Carlo.

" 'Reconozco este niño que consta en la partida que antecede por mi hijo natural, queriendo sea este documento de reconocimiento en forma. Mayagüez y marzo 16 de 1851. Isidoro Arroyo.'

"No aparece de modo alguno hechos que demuestren que es un documento auténtico y que el reconocimiento se hizo por Isidoro Arroyo de acuerdo con las leyes en vigor en la fecha en que celebró el bautismo del dicho Dionisio Eleuterio Arroyo y Striker, no siendo por tanto la nueva certificación un documento fehaciente. La corte deniega de nuevo hacer la declaratoria de herederos que se interesa."

Con la certificación descrita en la orden que se acaba de citar se acompañó otra, que no menciona el juez de distrito, cuyo tenor literal es como sigue:

"Dionisio Eleuterio.—B. En esta parroquia de Nuestra Señora de Candelaria de la Villa de Mayagüez a diez y seis de marzo de mil ochocientos cincuenta y uno: yo Presbítero Don Domingo de Villanueva, Caballero de la Real Orden Americana, de Ysabel la Católica, y Cura Teniente de ella: bauticé solemnemente, puse óleo y Crisma a Dionisio Eleuterio que nació a nueve de octubre del año pasado, hijo natural reconocido de Don Isidoro Arroyo y de Doña Ceferina Striker de esta feligresía, *como consta del documento que obra en este archivo,* abuelos paternos Don Isidoro Arroyo, difunto, y Doña Juana Budia, y maternos Don Enrique Striker y Doña Manuela Seguinó. Fueron sus padrinos, Don Martín Más y Doña Pilar Carlos a quienes advertí el parentesco espiritual y obligaciones de que doy fe. Domingo de Villanueva. Hay un sello que dice: Parroquia de Nuestra Señora de Candelaria, Mayagüez, P. R. La partida anterior es una copia exacta y fiel de la original folio 117, libro 20. Firmado: Juan A. Lynch, C. ss. R., Vicario."

La certificación de la partida de bautismo expresamente se refiere a un documento que se halla en el archivo parroquial como prueba de la verdad de lo que en la misma se hace constar respecto al estado civil del niño. Después de sesenta y seis años se encuentra en el archivo parroquial el documento inserto en la orden contra la que se ha interpuesto el presente recurso. Es de la misma fecha de la partida de

marzo 16 de 1851. Los términos en que está concebido el primer párrafo de la misma siguen a los de la partida bautismal palabra por palabra, con la sola excepción de la palabra "natural" al describir el estado civil del niño y la adición de la palabra "difunto" que sigue al nombre del abuelo materno. Luego se refiere a "la partida que antecede" para mayor identificación del niño. No existe indicación alguna de fraude.

Con anterioridad al año 1885 los curas párrocos eran los encargados del registro civil y por ende funcionarios públicos, ante quienes se reconocían los hijos naturales, y bastaban sus certificaciones expedidas al efecto para acreditar el acto de reconocimiento. El clero constituyó un departamento del Estado hasta la fecha en que ocurrió el cambio de soberanía. Además, nuestras cortes de justicia "se inclinan siempre a favor del hijo natural cuando el reconocimiento resulta claro y públicamente, cualquiera que pueda ser la forma en que se verifique, siempre que quede de él constancia auténtica y fehaciente." *Iturrino* v. *Iturrino*, 24 D. P. R. 474.

En el caso de *Pérez Villamil et al.* v. *Romano et. al.*, 19 D. P. R. 883, esta corte se expresó en los siguientes términos:

"* * * las cortes se inclinan siempre a favor del hijo natural cuando el reconocimiento resulta claro y públicamente, cualquiera que pueda ser la forma en que dicho reconocimiento se verifique, siempre que quede de él constancia auténtica y fehaciente. Los apelantes no nos han citado ningún caso del Tribunal Supremo de España que sea semejante en absoluto en cuanto a los hechos, y en ausencia de alguna cita de esta naturaleza debe prevalecer la interpretación natural y humana."

La cuestión allí planteada era respecto de la autenticidad de determinadas firmas dubitadas que aparecían en determinados documentos en un procedimiento seguido ante "un juez de paz," en relación a lo cual esta corte dijo:

"Creemos, además, que estos procedimientos habidos en el juzgado de paz, constituyeron un documento público suficiente. A pe-

tición del juez de paz ambas partes expresaron su asentimiento firmando el acta. Ningún documento notarial podría ser más solemne."

Y otra vez en la misma opinión, (página 884), se dice:

"Además, convenimos con la corte sentenciadora, en que como el origen de este documento procedente del Juzgado de Paz de Carolina, había quedado probado satisfactoriamente, la prueba que había de presentarse para impugnar su autenticidad tendría que ser muy clara. A la vez, este documento es de más de 30 años y parece estar comprendido en las disposiciones del artículo 102 de la Ley de Evidencia, párrafo 33."

Véase también el artículo 89 de la propia Ley de Evidencia.

Este procedimiento siguió su curso puramente *ex parte* hasta la fecha en que se dictó la orden declarando sin lugar la solicitud de declaratoria de herederos, en la que el juez dispuso que pasara el expediente al fiscal, "por el interés que pueda tener en este caso El Pueblo de Puerto Rico." La orden contra la cual se ha establecido el presente recurso de apelación, dictada tres semanas después dispone además que se libre un mandamiento al márshal de la misma, mandándole a tomar posesión de los bienes que a la sazón se hallaban en poder del administrador interino, a quien a su vez se le requería rindiese cuentas de su administración dentro de las cuarenta y ocho horas. Del escrito de apelación fué notificado el fiscal y El Pueblo de Puerto Rico compareció por primera vez ante este tribunal, pidiendo que se confirmase la orden dictada por la corte inferior.

La fraseología de la primera oración del párrafo anterior envuelve cierta reserva por razones que nada tienen que ver con este recurso, por lo cual es innecesario enumerarlas. Los hechos expuestos han sido relatados como una mera indicación del alcance de esta decisión y a fin de evitar posibles interpretaciones erróneas debido al título de la acción y a la manera de designarse las partes en esta apelación, pero no con la intención de implicar que la orden negando la declaratoria de herederos y los procedimientos subsiguientes hayan

convertido el procedimiento *ex parte* en uno contencioso. En cuanto a esto, no expresamos opinión alguna.

La orden apelada debe ser revocada y el caso devuelto para ulteriores procedimientos no incompatibles con esta opinión.

> *Revocada la orden apelada y devuelto el caso para ulteriores procedimientos no incompatibles con la opinión.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron en la resolución de este caso.